## JEWETT vs. DAVIS.

APPEAL from the court of the first district.

The publication in the State gazette *is not a promulgation of the acts of the legislature, under the provisions of the civil code.*

PORTER, J. delivered the opinion of the court. This case was heard in last June term, and judgment pronounced. On the application of the appellant, a rehearing has been granted, and it has been again argued.

The cause commenced by attachment, and was dismissed in the court below, for want of a sufficient affidavit. It presents two questions :—First, whether the oath of the plaintiff be proved to us by legal evidence? And, second, whether the want of an affidavit by him, is supplied by that of his agent?

That of the principal, is evidenced by a

certificate of the mayor of the city of New York, with his seal annexed, and we are clearly of opinion that it is not legal proof of the fact which it is offered to establish. We have no particular knowledge of either the seal, or hand-writing of the mayor of New York, and to admit inferior evidence of this kind, would open a door to numerous frauds. The plaintiff's counsel is correct, in stating that this is a document which need not be authenticated according to the acts of Congress. We have already decided that point. But it is defective on general principles of law. The seal of the state should have been added, or proof given of the seal of the mayor, and of the hand-writing. *Woolsey* vs. *Paulding.* 9. *Mart.* 280.

A correct solution of the second question depends on ascertaining the period at which the late law, amending the Code of Practice, was promulgated. If it was in force at the time the affidavit was made, the plaintiff contends it was such as the amendment authorises. The defendant insisted that, even supposing the act to have been in force, the

EasternDis'ct
*March* 1827.

JEWETT
*vs.*
DAVIS & AL.

affidavit is not according to law; but he principally relies on the argument, that at the time the oath of the agent was made, the act was promulgated.

On the hearing of the rule, taken to dismiss the attachment, the plaintiff introduced the *Louisiana State Gazette* of the 13th April, 1826, containing an act, entitled " an Act to amend the Code of Practice of the State of Louisiana," &c.

The counsel for the appellant has argued, that the law is in such a state of confusion, the court may adopt any construction which it thinks most useful and convenient. That our legislation, in regard to the promulgation of the laws, is confused and embarrassing is undoubtedly true; but this circumstance, though it increases the labour of the court, does not diminish its obligation to endeavour to find out what the will and intention of the legislature was, and enforce it, even though it did not coincide with our notions of utility. But it is believed that the opinion we entertain, eminently promotes the object which the counsel seems to think should guide the court in interpreting the laws that have been passed on this subject.

The civil code has provided, " That laws Eastern Dis't March, 1827.

JEWETT
vs.
DAVIS & AL. cannot be obligatory without being known; *that they shall be promulgated by the governor of the state.*"

" That the laws shall be directed to the authorities entrusted with their execution ; and to such other persons as the law has designated, or may designate in the form or manner which is or may be prescribed to ensure their publicity."

" The clerks of all the courts of justice of the state, shall insert in a registry, to be kept for that purpose, the titles of all the laws which shall have been directed to them, together with the day on which they shall have received them." *C. Code, Art.* 4.

By the fifth section of an act, supplementary to an act, entitled an act further and more effectually to provide for the public printing, passed the 12th December, 1816, it is made the duty of the governor, for the time being, immediately on the delivery of the laws into the office of the secretary of the state, to cause said laws to be distributed, and sent to the parish judges of the different parishes, by them to be delivered to such persons in

Eastern Dis't
March, 1827.

JEWETT
vs.
DAVIS & AL.

their parishes, as may be by law entitled to them. *Act of* 1817, p. 6.

Now, although these enactments do not positively exclude publication in the newspapers, as a means of promulgation, yet the whole of them taken together, would seem to leave little doubt that such a mode was not contemplated by the legislature. The governor is directed to promulgate these laws, *by delivering them to the different officers charged with their execution.* This direction most certainly negatives the idea, that sending them to the public printer to be printed, is a promulgation ; for he is not one of the persons charged with their execution or application, and *non constat* that one half of the officers in the state take his paper. The printer prepares the laws for promulgation by multiplying the copies of the acts which are transmitted to him in manuscript, and the act of the governor which forwards them to him, cannot, without doing great violence to the plain meaning of the words used in the code, be construed, a forwarding to the persons entrusted with their execution. The clause which orders the clerks of the several courts to record the day on which the sta-

Eastern Dis'ot
*March*, 1827.

JEWETT
*vs.*
DAVIS & AL.

tutes are received by them, supports this interpretation. No possible reason can be assigned for such a direction, unless it was to ascertain some certain time at which the laws were promulgated, and if they were previously promulgated by a publication in the newspapers, such a direction was useless and absurd.

There is still another consideration. If it had been the intention of those who made the law, that publication in the newspapers, was promulgation, can it be believed that so many provisions would have been introduced, and such particular directions given about the governor forwarding them to officers charged with their execution, when the whole object could have been attained by simply enacting, " that the laws shall be promulgated, by publication in the State Gazette."

We have, in some measure, a construction of the legislature on their own acts on this subject. In the year 1817, it was deemed important to promulgate the law, amending the acts enacted to organize the courts of this state, and for other purposes, earlier than it would have been by the usual mode. A resolution was accordingly passed, by which

the governor was requested to have 150 copies of it printed without delay ; and he was required to *promulgate the same*, by forwarding immediately to each of the clerks of the supreme and inferior courts of this state, and to the several judges of the district and parish courts, a copy of the law. This direction was wholly unnecessary, if the ideas of the appellant' in relation to this matter be correct. The object of the legislature would have been attained by a publication in the State Gazette, and more speedily than it could have been in the mode to which they resorted.

The great error of the argument by which this interpretation is resisted, arises from confounding *publication*, with *promulgation*. These words in common parlance, are nearly synonimous. But when applied in a legal and technical sense, to giving such publicity to laws, as that no one can plead ignorance of them, it does not follow that every publication is a promulgation.

This construction does no violence to the sixth article of the code. Three days after the laws are sent to the clerk of the parish where the seat of government is held, they are considered in force there, and thence in the

other parishes at the period therein prescribed, that is one day for every four leagues. It is not seen what greater objection can lie to implying a knowledge from promulgation in this way, than there would be to a promulgation by printing in the newspapers.

This question was brought before the court in the case of *St. Avid* vs. *Weimprender*, and it was there held, that the act of the governor, promulgating the laws, was necessary to enable a court of justice to execute them. In the opinion delivered, it was said—"If, without his act, the laws be promulgated and become known, the execution is not to take place, till the directions of the code be complied with." The point actually decided in that case, does not go to the whole length of that now before us for decision; but this reasoning of the court shews satisfactorily the view then taken of the matter, and that the promulgation must come through the executive.

It has been strongly pressed on us, that publication in the newspapers could have been directed for no other purpose, but that of promulgation, and that the construction adopted by this court in its former judgment, is highly inconvenient.

We think an important and highly beneficial object was contemplated to be attained by the legislature, in directing the laws to be printed in the newspapers, and that that object was not promulgation. It has been a matter of serious concern to nearly all legislators, to provide means for making their laws known, before men were bound by them, and different modes have been resorted to in different countries, to accomplish this. In none has it been completely attained, and from the ignorance and inattention of mankind, it never can be completely attained. No matter what precautions are taken, there will still be many whose conduct and pecuniary interests must be governed by laws, of which they are ignorant. But this very circumstance furnishes the strongest reason why all possible publicity should be given to laws before men are bound by them. There cannot, perhaps, be a better mode devised to attain so desirable an end, than that which the legislature of our state seems to have adopted, namely :—to publish them first in a newspaper, and then let some time elapse for the knowledge of them to spread through the community before they are officially promulgated, and made binding on

the citizen. By this means the communication Eastern Dis't March, 1827. of actual knowledge is, as far as practicable, reconciled with the public interest; which will JEWETT vs. DAVIS & AL. not permit that, after a certain time, any one should plead ignorance of the law.

It has been urged, that the governor sending the acts of the legislature to the district court in New Orleans, is a very bad mode of giving notice to a distant parish, that the laws are promulgated. But this argument overlooks the important fact, that the laws have already had publicity given them; and that the object of this promulgation is rather to fix a particular time at which they shall be in force, than to give a knowledge which is supposed to be already communicated by publication. This, however, applies with almost equal strength to the position assumed, that publication in the newspapers gives such publicity, as that every citizen can know what laws are enacted.

It is no doubt true, that it is almost impossible by any legislation to attain the most desirable end of bringing home the knowledge of the law to every man before he is punished for a breach of it. But admitting that the mode contended for by the appellant, has all

the advantages which he represents, the inter-
pretation now given, enables the citizen to
enjoy the benefit of it : and, with this addi-
tional security, that he is not even bound by
this publication until the governor officially
promulgates the law. The chances of the
citizen knowing it, are therefore much in-
creased ; and, consequently, the risk dimi-
nished of his suffering by enactments to which
he is a stranger.

It is to be regretted that the mode of pro-
mulgation, contemplated by the law as it now
stands, should be open to so many objections.
One certain day ought to be given for the seat
of government, and the law be made obliga-
tory through the whole extent of the state
within a limited time after the promulgation.
At present, the period in which the laws go
into effect, is made to depend on the time at
which they reach the different parishes, unless
promulgation has been made in this city in
the manner pointed out by the code. This is
certainly a great inconvenience, and it has
been properly pressed on the court that it never
could have been the intention of the legisla-
ture to adopt so confused and perplexed a
mode of giving a certain date to the time

when their laws should be in force. But arguments *ab inconvenienti*, cannot authorise us to say, that two or three articles placed in our first civil code, and retained on the late revision of it, mean nothing. The remedy for these inconveniences is in the hands of the legislature, who, as soon as their attention is drawn to the evil, will no doubt remove it, and give entire efficacy to the system on which they have heretofore acted.

The judgment of the district court should be therefore affirmed with costs.

*Watts & Lobdell* for the plaintiffs, *Grymes* for the defendants.